IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JANET BURLESON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04CV795 |
| | ) | |
| ARLENE TOBACK, LYNETTE JACOBS, | ) | |
| LIL BEGINNINGS INTERNATIONAL, | ) | |
| MARY LOU MCEACHERN, KAREN | ) | |
| FRANCSCHINI, DANIELLE EMOND, | ) | |
| MONA STONE, KRIS PATSOLIC, | ) | |
| DEBI MURPHY, JENNIFER JACULA, | ) | |
| KIM BOND, KAY BAXTER, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Beaty, District Judge.

This matter is before the Court on various Motions to Dismiss filed by several of the Defendants in this matter. For the reasons discussed below, the Court concludes that it does not have personal jurisdiction over the Defendants who have filed Motions to Dismiss in this case. Therefore, the Motions to Dismiss filed by Defendants Lil Beginnings International ("LBI"), Mary Lou McEachern ("McEachern"), Lynette Jacobs ("Jacobs"), Mona Stone ("Stone"), Debi Murphy ("Murphy"), Kim Bond ("Bond"), Kris Patsolic ("Patsolic"), Danielle Emond ("Emond"), and Jennifer Jacula ("Jacula") [Document Nos. 3, 6, 8, 10, 12, 13, 15, 42] will be GRANTED and the claims against Defendants LBI, McEachern, Jacobs, Stone, Murphy, Bond, Patsolic, Emond, and Jacula will be dismissed without prejudice. In addition, the Court concludes that Plaintiff has failed to make a prima facie allegation of jurisdiction over the remaining Defendants Arlene Toback ("Toback"), Kay Baxter ("Baxter"), and Karen Francschini ("Francschini"). However, given that these three Defendants have failed to respond in any way to Plaintiff's claims, the Court will allow

Plaintiff thirty (30) days in which to file any additional evidence of jurisdiction as to these three Defendants. If Plaintiff fails to provide sufficient additional evidence or allegations to support the Court's exercise of jurisdiction over the remaining Defendants, the Court will dismiss *sua sponte* the claims against Defendants Toback, Baxter, and Francschini.

## I.    FACTUAL BACKGROUND

Plaintiff is a North Carolina resident and is involved in training miniature horses as guide animals for the vision-impaired. However, other individuals involved with training and raising miniature horses disagree with the use of horses as guide animals, and have expressed their disagreement in an internet web forum (the "Forum") operated by LilBeginnings International ("LBI"). Plaintiff in this case brings claims against LBI and against various individuals involved in postings on the LBI Forum criticizing the use of guide horses.[1] Plaintiff contends that the publishers of LBI used their editorial control to selectively encourage libelous content about Plaintiff and to remove positive information about her, and failed to retract the allegedly libelous statements. In addition to LBI, Plaintiff similarly complains of allegedly libelous information on two informational websites registered by Defendant McEachern and found at

---

[1] Because Plaintiff has included twelve Defendants in this suit, the Court will first summarize the general nature of Plaintiff's claims. In analyzing the Court's jurisdiction, the Court will then turn to an analysis of each of the Defendants individually. With respect to the allegedly defamatory postings, Plaintiff complains of the following statements: (1) Defendant Jacobs' statement, "I still fail to see how people that have not been taught how to train a blind person in mobility and orientation can train a horse to keep them safe"; (2) one of the named Defendants, referring to Plaintiff and her husband, posted, "I think she and her husband couldn't careless [sic] about minis [miniature horses] as guide animals . . . . They obviously have some serious mental health issues"; (3) Sue Hartley, who is not a defendant in this case, posted with consent of LBI, "These people have a mental problem or something to that extent," presumably referring to those training miniature horses as guide animals for the vision-impaired; and (4) similar postings were made by Defendant Francschini on the Forum. (Compl. at ¶ 20.)

http://www.guidehorse.info (the "Info Site") and http://www.guidehorseno.com (the "No Site").[2]

Plaintiff also brings claims for various alleged intellectual property infringements. First, Plaintiff contends that Plaintiff (or her family) posted a web page entitled "Boycott the L'il Beginnings Miniature Horse Web Site," and that Defendant McEachern republished that page on the LBI website. Second, Plaintiff complains of cybersquatting and trademark violations. Specifically, Plaintiff contends she owns trademarks on a seeing eye horse logo ("Guide Horse Logo"), the words "Guide Horse" and "seeing eye horse," and website addresses and name derivatives of the words "Guide Horse" and "seeing eye horse." Plaintiff further notes that she has not licensed any uses of these trademarks to Defendants. Plaintiff contends that Defendant McEachern has illegally registered the names "www.guidehorse.info" and "www.guidehorseno.com", and that Defendants have published websites at those addresses.[3]

---

[2] Without setting out all of the complained-of statements, the following are illustrative: "During the telephone interview Suzanne [presumably the interviewer] asked [Plaintiff] to clarify what she planned to teach guide horses. She could not do this clearly. . . . Furthermore, [Plaintiff] knows nothing about training guide animals for the blind. Suzanne Whalen, the President of the National Association of Guide Dog Users (NAGDU), discovered this in an extensive interview with [Plaintiff]. . . . By [Plaintiff's] own admissions [Guide Horse] personnel know nothing about training guides for the blind and have made very little effort to ensure that the horses will be safe guides before accepting applicants. . . . Blind people are not told of the negative aspects of owning a guidehorse. . . . When asked about [the danger of traffic], [Plaintiff] simply said that horses constantly look for danger. That's her traffic training, folks. She's leaving it up to the horse. When Suzanne asked her if she had any idea how guide dogs were taught traffic safety, she said she did not. . . . All of this adds up to one thing: trouble for any blind person unwise or unfortunate enough to choose this method of mobility."

[3] The Court notes, however, that Plaintiff has not attempted to bring an *in rem* action related to those websites pursuant to 15 U.S.C. § 1125(d)(2)(A). Therefore, the Court's jurisdictional analysis does not include any potential *in rem* action, and includes only Plaintiff's asserted claims against Defendants based on alleged personal jurisdiction.

3

Additionally, Plaintiff charges that Defendants have misappropriated a likeness of the Guide Horse Logo claimed by Plaintiff.

Plaintiff has also brought claims for tortious interference with business relationships, alleging that Defendants conspired to unlawfully interfere with contractual business relationships between Plaintiff and the Guide Horse Foundation, the Guide Horse Foundation's clients, and Plaintiff's own clients. Further, Plaintiff asserts that Defendants conspired to tortiously interfere with Plaintiff's guide horse training by making false accusations, which caused one of Plaintiff's clients to return her guide horse. Plaintiff also claims that when another of her clients attempted to respond to allegedly libelous comments on the Forum, he was "banned by the moderator for attempting to stop the defamatory comments." (Compl. at ¶ 32.) Plaintiff argues that Defendants' conduct intentionally induced Plaintiff's clients to rescind their contracts with her. (Compl. at ¶ 33.) Plaintiff also brings a claim for "harassment," claiming that Defendants have attempted to force her to discontinue her work with guide horses. (Id. at ¶ 38.)[4]

In response, Defendants contend that this Court does not have personal jurisdiction over them, and that even if the Court did have jurisdiction, Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff has included twelve (12) defendants in this suit, none of

---

[4] Specifically, Plaintiff alleges that Defendant Mona Stone, acting as moderator of the Forum, posted the following statement: "I see they have a toll free number . . . maybe we should ALL call them to let them know our feelings, and run theior [sic] phone bill up sky-high!" (Compl. at ¶ 39 (alteration in original).) Plaintiff contends that Defendant Toback and others made "obscene and threatening" late-night phone calls to the Guide Horse Foundation's 800-number which Defendant Stone posted in the Forum. (Id. at ¶ 40.) Namely, Plaintiff contends that Defendant Toback called and said that "the members of the [F]orum were not going to allow her to continue with her experiment [training guide horses] and that they were going to stop her, 'whatever it takes'." (Id.)

whom are citizens or residents of North Carolina, and many of whom are residents of Canada.[5] Defendants have separately filed various Motions to Dismiss on these grounds. For ease of analysis, the Court will first consider the general standards for assessing personal jurisdiction, particularly where contact with the forum state is based on Internet postings, and will then consider the applicable standards separately with respect to each of the Defendants.

## II.    PERSONAL JURISDICTION STANDARDS

### A.    General Standards for Personal Jurisdiction

Federal courts may assert "personal jurisdiction over a defendant in the manner provided by state law." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (construing Fed. R. Civ. P. 4(k)(1)(A)). To exercise personal jurisdiction over a nonresident defendant, "the exercise of jurisdiction must be authorized under the state's long-arm statute" and "the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Id. North Carolina's long-arm statute provides for personal jurisdiction in "any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party . . . is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C. Gen. Stat. § 1-75.4(1)(d). This statute has been interpreted as extending to the full extent permitted by the

---

[5] The Court notes, however, that although some of the Defendants are residents of Canada, Plaintiff has not asserted jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2), which provides for the exercise of jurisdiction in some instances where a defendant has contacts with the United States but who would not otherwise be subject to personal jurisdiction in any state. Plaintiff has not presented any allegation or argument (in either her Complaint or her Responses to the Motions to Dismiss) that any of the Defendants in this case could be subject to personal jurisdiction pursuant to that provision. The Court will not attempt to construe a basis for jurisdiction that is not alleged by Plaintiff or established based on the allegations before the Court, and therefore the Court will not address further the question of whether Rule 4(k)(2) could apply in this case.

Constitution. See Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001); Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977) ("By the enactment of G.S. 1-75.4(1)(d), it is apparent that the General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process."). To satisfy due process, the defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (citation omitted).

Personal jurisdiction over a defendant may be either "general" relating to any course of action or "specific" and related to the particular course of action. See ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002). Specific jurisdiction can be found "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum . . . ." Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S. Ct. 2569, 2579, 53 L. Ed. 2d 683 (1977)). In such a case, "the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction." Id. (quoting Shaffer, 433 U.S. at 204, 97 S. Ct. at 2579). In contrast, general jurisdiction exists even if "defendant's contacts with the State are not also the basis for suit" when the defendant has "general, more persistent, but unrelated contacts with the State." ALS Scan, 293 F.3d at 712.

B.    Requirements for Asserting General Jurisdiction

For a court to exercise general jurisdiction, the defendant's contacts with the forum state must be "continuous and systematic." See Helicopteros, 466 U.S. at 416, 104 S. Ct. at 1873. This

6

is a rigorous standard.  See ALS Scan, 293 F.3d at 715 ("[T]he threshold level of minimum contacts

sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction."); ESAB

Group Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997).   In regard to contacts based upon

Internet activity, the Fourth Circuit has held that it is not ready to "recognize that a State may obtain

general jurisdiction over out-of-state persons who regularly and systematically transmit electronic

signals into the State via the Internet based solely on those transmissions."  ALS Scan, 293 F.3d at

715.  Thus, even regular and systematic contact with the State via the Internet, without "something

more," is insufficient to establish general jurisdiction.[6]  Id. (stating that "[s]omething more would

have to be demonstrated").

C.      Requirements for Asserting Specific Jurisdiction, Particularly Based on Internet
        Contacts

Generally, in deciding whether specific jurisdiction exists, the Court will consider "(1) the

extent to which the defendant purposefully availed itself of the privilege of conducting activities in

the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and

(3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan,

293 F.3d at 712 (internal quotations omitted).  Although developed in the context of traditional,

---

[6] In addition, it is illustrative to note the high threshold required outside the Internet context
to establish contacts sufficient to warrant general jurisdiction.  In Nichols v. G. D. Searle & Co., the
Fourth Circuit held that general jurisdiction did not exist despite a defendant's numerous contacts
with the forum state, including employing fourteen forum state residents, holding five large
meetings annually in the forum state, and earning between $9 million and $13 million in revenues
in the forum state annually.  Nichols v. G. D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993)
("[B]road constructions of general jurisdiction should be generally disfavored."); cf. Estate of
Stephen Bank v. Swiss Valley Farms, Co., 286 F. Supp. 2d 514, 517-18 (D. Md. 2003) ("[W]ith
regard to non-residents, general jurisdiction is ordinarily reserved for those defendants who have
such substantial contacts with the forum state that they may be considered 'essentially domiciled'
within that state.") (citation omitted).

7

physical contacts, e.g., sending personnel or products into the forum state, these factors have been adapted by the Fourth Circuit to determine the existence of personal jurisdiction based upon non-physical contacts. See ALS Scan, 293 F.3d at 709 ("[a]dapting the traditional due process principles . . . to the Internet context").

In ALS Scan, plaintiff ALS Scan, Inc. brought suit in Maryland against defendant Digital Service Consultants, Inc. ("Digital"), a nonresident Internet service provider ("ISP"), for allegedly enabling another defendant, nonresident website owner Alternative Products, Inc., to engage in copyright infringement. Id. at 709. The Fourth Circuit dismissed the complaint against Digital as an ISP for lack of personal jurisdiction after finding that Digital's only related contact with the forum state was providing bandwidth that allowed Alternative Products, Inc. to publish a web page accessible in Maryland. Id. at 709, 714-15.

In fashioning a rule for Internet-based contacts, the ALS Scan court noted that even though "the standards used to determine the proper exercise of personal jurisdiction may evolve as technological progress occurs, it nonetheless has remained clear that technology cannot eviscerate the constitutional limits on a State's power to exercise jurisdiction over a defendant." Id. at 711. Specifically addressing Internet-based contacts, the Fourth Circuit continued:

> Applying the traditional due process principles governing a State's jurisdiction over persons outside of the State based on Internet activity requires some adaptation of those principles because the Internet is omnipresent – when a person places information on the Internet, he can communicate with persons in virtually every jurisdiction. If we were to conclude as a general principle that a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is accessed, then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist. The person placing information on the Internet would be subject to personal jurisdiction in every State.

Id. at 712.

8

For guidance, the ALS Scan court turned to the watershed case on Internet-based personal jurisdiction, Zippo Mfg. Co. v. Zippo Dot Com, 952 F. Supp. 1119 (W.D. Pa. 1997). In Zippo, the Western District of Pennsylvania announced the "sliding scale" test for gauging the sufficiency of Internet-based minimum contacts:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet [w]eb site which is accessible to users in foreign jurisdictions. A passive [w]eb site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive [w]eb sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the [w]eb site.

ALS Scan, 293 F.3d at 713 (quoting Zippo, 952 F. Supp. at 1124). Based on this sliding scale, the Zippo court noted that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Id. (quoting Zippo, 952 F. Supp. at 1124).

Adopting and adapting the Zippo model, the Fourth Circuit in ALS Scan concluded that personal jurisdiction may be asserted over a nonresident when "that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." ALS Scan, 293 F.3d at 714. Because the ALS Scan court determined that the ISP's activity in providing bandwidth was passive insofar as it did "not direct its electronic activity specifically at any target" in the forum state or demonstrate an intent to engage in business there, personal jurisdiction was held to be lacking. Id. at 715.

9

The Fourth Circuit found this standard for Internet-based contacts to be consistent with the U.S. Supreme Court's approach in <u>Calder v. Jones</u>, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). <u>Id.</u> at 714. In <u>Calder</u>, a California citizen brought suit in California Superior Court against a Florida writer for libel, invasion of privacy, and intentional infliction of emotional harm. <u>Calder</u>, 465 U.S. at 785, 104 S. Ct. at 1484. The Supreme Court held that the California court's exercise of personal jurisdiction was proper given that the tabloid in which the writer's work was published had its highest circulation in California and the author knew that the injury would be suffered in that state, where the person who was the subject of the article was known to reside. <u>Calder</u>, 465 U.S. at 789-90, 104 S. Ct. at 1487. The Fourth Circuit found its decision and standard in <u>ALS Scan</u> to be analogous, resulting in specific jurisdiction only where a nonresident's Internet activity is directed at the forum state and causes an injury that gives rise to a potential claim there. <u>ALS Scan</u>, 293 F.3d at 714.

Since <u>ALS Scan</u>, the Fourth Circuit has had occasion to revisit and elaborate upon its Internet-based contacts standard. In <u>Young v. New Haven Advocate</u>, the warden of a Virginia prison sued two Connecticut newspapers for defamation based on articles published around March 30, 2000. <u>Young v. New Haven Advocate</u>, 315 F.3d 256, 258-59 (4th Cir. 2002). In the late 1990s, Connecticut experienced severe prison overcrowding, causing the state to contract with Virginia to house some of its prisoners in Virginia correctional facilities. <u>Id.</u> at 259. Connecticut transferred about 500 prisoners to Virginia's Wallens Ridge State prison ("Wallens Ridge"), where the plaintiff was employed as warden. <u>Id.</u> Connecticut's policy of exporting prisoners to Virginia was controversial in Connecticut. In covering the story, both newspapers published content that could be construed as critical of both the plaintiff and Wallens Ridge. <u>Id.</u>

10

In determining whether the defendants were amenable to suit in the Western District of Virginia, the Young court applied ALS Scan and considered the newspapers' contacts with the forum state. The court found that both newspapers published portions of their content, including the complained-of articles, on the Internet, and that neither website, judging from copies of assorted print-outs from each newspaper's site from January 26, 2001, had "any content with a connection to readers in Virginia." Id. at 260-61. Notwithstanding, the plaintiff advanced a tripartite argument for finding specific personal jurisdiction based upon Calder: (1) the newspapers, aware of plaintiff's Virginia residency, intentionally defamed him in their articles, which were (2) accessible in Virginia via the papers' websites, and (3) caused the plaintiff to suffer injury in Virginia. Id. at 261. Before applying the ALS Scan analysis, the court noted that the plaintiff's assertion that Calder required finding jurisdiction was incorrect:

> Calder does not sweep that broadly . . . . [W]e emphasized how important it is in light of Calder to look at whether the defendant has expressly aimed or directed its conduct toward the forum state. We said that 'although the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction . . . is to be upheld.' We thus had no trouble in concluding in ALS Scan that application of Calder in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly targeted at or directed to the forum state.

Id. at 262-63 (quoting ESAB Group, 126 F.3d at 626) (alterations in original) (internal citations omitted).

Turning to the ALS Scan standard, the Fourth Circuit considered the first two prongs together, inquiring "whether the newspapers manifested an intent to direct their website content – which included certain articles discussing conditions in a Virginia prison – to a Virginia audience." Id. at 263. Emphasizing that something beyond accessibility in the forum state was required to

11

"'indicate that the [newspapers] purposefully (albeit electronically) directed [their] activity in a substantial way to the forum state,'" the court opined that "[t]he newspapers must, through the Internet postings, manifest an intent to target and focus on Virginia readers." Id. (quoting Panavision Int'l, L. P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998) (alterations in original)). Reviewing the web page print-outs, the court examined "their general thrust and content", finding "[t]he overall content of both websites [to be] decidedly local, and neither newspaper's website [to] contain[ ] advertisements aimed at a Virginia audience." Id. The court determined that the papers were intended to serve local readers in Connecticut and simply were not designed to attract or serve readers in Virginia. Id. Indeed, the Fourth Circuit found that even the articles concerning Wallens Ridge and the warden were ultimately focused on Connecticut and its prisoner transfer program, rather than their Virginia subjects. Id.; cf. Griffis v. Luban, 646 N.W.2d 527, 536 (Minn. 2002) ("The mere fact that [the defendant] knew that [the allegedly defamed plaintiff] resided and worked in Alabama is not sufficient to extend personal jurisdiction over [the defendant] in Alabama, because that knowledge does not demonstrate targeting of Alabama as the focal point of . . . the allegedly defamatory statements.") (cited with approval in Young, 315 F.3d at 264). Therefore, because the Fourth Circuit found the websites to be "aimed at a Connecticut audience," the court held that the defendant newspapers could not reasonably anticipate being haled into court in Virginia. See Young, 315 F.3d at 264.

The Fourth Circuit again considered Internet-based contacts in Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390 (4th Cir. 2003). In Carefirst, the Fourth Circuit decided whether a Maryland court could assert personal jurisdiction over defendant Carefirst Pregnancy Centers, Inc. ("CPC"), an Illinois corporation operating a website alleged to infringe

12

upon the trademark rights of plaintiff Maryland corporation Carefirst of Maryland, Inc. ("Carefirst"). Id. at 393. CPC, a non-profit organization based in Chicago, had but one contact with Maryland: an Internet website accessible through one of several web addresses. Id. at 394. The court found that CPC used these addresses to direct Internet browsers to its website, where it solicited donations and provided pregnancy-related information, including discussion of Chicago-area resources. Id. With respect to donations, contributors could make credit card contributions either directly on the website or by calling a toll-free number. Id. at 395. Online donors would receive a follow-up "thank-you" e-mail. Id. Between 1991 and 2001, CPC received $1,542 in donations from Maryland. Id. Excluding a single donation made by Carefirst's counsel, there was nothing to indicate that the Maryland donations were made via CPC's website. Id.

In determining whether the Maryland district court could properly exercise personal jurisdiction, the Fourth Circuit focused its inquiry on "the quality and nature of [CPC's Maryland] contacts." Id. at 397 (quoting Nichols v. G. D. Searle & Co., 783 F. Supp. 233, 238 (D. Md. 1992) (alteration in original)). In analyzing the defendant's contacts with the forum state, the Fourth Circuit noted that the court "should not 'merely . . . count the contacts and quantitatively compare this case to other preceding cases.'" Id. (quoting Nichols, 783 F. Supp. at 238). Instead, the court emphasized that evidence must show that the defendant directed electronic activity into Maryland with the "manifest intent of engaging in business or other interactions with that state in particular." Id. at 401 (citing to ESAB Group, 126 F.3d at 626, which found personal jurisdiction lacking where a defendant's business activities focused "generally on customers located throughout the United States and Canada without focusing on and targeting" the forum state). Thus, the Fourth Circuit found the controlling issue to be "whether CPC 'expressly aimed' its allegedly unlawful online

13

conduct at Maryland." Id. at 398.    In resolving this question, the Carefirst court again turned to the ALS Scan framework and declared that for CPC's website to bring CPC within the jurisdiction of the Maryland district court, "the company must have done something more than merely place information on the Internet." Id. at 400. Instead, "CPC must have acted with the 'manifest intent' of targeting Marylanders." Id. In determining whether the defendant intended to target the forum state, the Fourth Circuit looked to "the character of the website at issue." Id. In addressing website character, the court first noted the "semi-interactive" character of the CPC website. Id. A site is "semi-interactive" where it "contains features that make it possible for a user to exchange information with the host computer." Id. In such cases, "[w]hen a website is neither merely passive nor highly interactive, the exercise of jurisdiction is determined 'by examining the level of interactivity and commercial nature of the exchange of information that occurs.'" Id. (quoting Zippo, 952 F. Supp. at 1126). The court found that the single contribution by Carefirst's attorney was the only concrete evidence of online exchanges between CPC and Maryland residents. Id. at 401. Second, like in Young, the court emphasized that the overall content of the website had "a strongly local character" in its focus on providing services for metropolitan Chicago women; the only way in which the site targeted Marylanders was through its generalized call for contributions. Id. Based on these contacts, the court held jurisdiction to be lacking in Maryland. Id. The Fourth Circuit reasoned that although the injury was suffered in the forum state (as in Young), CPC could not have reasonably anticipated being haled into a Maryland court where it set up an accessible semi-interactive website that "did not . . . direct electronic activity into Maryland with the manifest intent of engaging in business or other interactions *within that state in particular*." Id. (emphasis added). In support, the court again noted ESAB Group's admonition that a defendant focusing

14

generally on customers throughout the United States is not enough to support personal jurisdiction; rather, the defendant must focus on and target the forum state. Id. (citing ESAB Group, 126 F.3d at 625-26).

Having set forth this framework and Fourth Circuit guidance for assessing specific personal jurisdiction, particularly with respect to Internet-based contacts, the Court will now apply those guidelines in the present case. When personal jurisdiction is contested under Federal Rule of Civil Procedure 12(b)(2), the Court conducts an inquiry into whether personal jurisdiction exists. Carefirst, 334 F.3d at 396. Where the Court, as here, decides a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff must establish a prima facie showing of personal jurisdiction to defeat the challenge. Id. The Court views all disputed facts and makes reasonable inferences in favor of the plaintiff in determining whether such a showing has been made. Id. As previously noted, Plaintiff in the present case brings claims against twelve Defendants. Plaintiff's primary allegations are asserted against Defendant LBI and against Defendant McEachern, who maintains the LBI site. The remaining Defendants had varying degrees of lesser involvement in the alleged conduct, including some Defendants against whom no specific allegations are made in the Complaint. Therefore, the Court will first consider the parties' contentions and the application of the relevant standard with respect to Defendant LBI and Defendant McEachern. The Court will then turn to a more abbreviated consideration of the lesser-involved Defendants.

III.   APPLICATION OF PERSONAL JURISDICTION STANDARDS

A.   Motion to Dismiss by Defendants Mary Lou McEachern and LBI

As noted above, Defendant McEachern maintains the LBI website. McEachern resides in Ontario, Canada, and LBI is maintained by McEachern in Canada, with its Internet web servers in

Illinois and Colorado. Defendant McEachern has secured support and web hosting for LBI, the Info Site, and the No Site with an Indiana company. However, Defendant McEachern and Defendant LBI have no contacts with North Carolina other than those alleged based upon Defendant McEachern's Internet activities through the three websites. According to McEachern, LBI began as a site primarily intended for Canadian miniature horse enthusiasts, but it has come to attract an international following. LBI is free to the viewing public. Although membership is required to post in the LBI Forum, membership is free.

Out of the Forum's roughly 2,000 members, Plaintiff contends there are at least twenty-one website members based in North Carolina, and possibly as many as forty-four. Plaintiff further alleges that LBI's North Carolina members have posted some 4,596 messages on the Forum, constituting 2.2 percent of total posts as of October 16, 2004. Plaintiff also notes that discussion in the Forum has occasionally touched on matters of interest in North Carolina, including a Mount Airy, North Carolina, horse show, that did not involve Plaintiff. In addition to the Forum, the site also offers a "for sale board" (the "For Sale Board") that functions as a free online marketplace for users.

Defendants concede that LBI is interactive insofar as the site allows users to engage in dialogue via Forum postings and listing items for sale. To cover the operating costs of the site, LBI offers advertising opportunities for members to promote their farms and other items related to miniature horses. Since 1996, five North Carolina breeders have paid to have their names listed on LBI, resulting in revenues of approximately $300.00 over an eight (8) year period. None of these listings were related to Plaintiff or her present claims.

16

Defendants McEachern and LBI contend that this Court lacks jurisdiction over them because they do not do any direct advertising to residents of North Carolina, nor have they manifested any intent to enter into contracts or establish a business presence within this State. In addition, Defendants assert that the LBI website is passive in that it is not selling a service, product, or other item of commerce, and the site is maintained solely to enable individuals to be able to share information about miniature horses. Based on these facts, Defendants McEachern and LBI argue that they have not manifestly targeted North Carolina so as to be found to have availed themselves of the protection of the law of North Carolina. McEachern and LBI further assert that they have had only *de minimis* contacts with North Carolina and that Plaintiff's claims do not arise out of the limited contacts that McEachern and LBI may have had with North Carolina.

In response, Plaintiff asserts that both general and specific personal jurisdiction over Defendants McEachern and LBI exists in the Middle District of North Carolina. First, Plaintiff contends that the Court can exercise *general* jurisdiction over McEachern and LBI because LBI's website directs electronic activity into North Carolina by its Internet presence. Plaintiff also contends that McEachern and LBI provide advertising space to North Carolina horse farms, and provide a Forum for discussing matters of interest to horse owners and farmers, including topics of local interest to North Carolinians. Second, Plaintiff argues that the Court can assert *specific* jurisdiction over McEachern and LBI for the same reasons, based on Plaintiff's contention that her claims arise out of those alleged contacts by McEachern and LBI. Plaintiff also contends that McEachern, through the LBI Site, the Info Site, and the No Site, has specifically targeted Plaintiff so as to defame her in her home state, North Carolina. Plaintiff further contends that none of the websites are strongly local in character or limited to Defendants' locale. Additionally, Plaintiff

17

contends that the Info Site directs electronic activity into the State by its presence on the Internet and by soliciting and receiving support from North Carolinians. Plaintiff argues that Defendants McEachern and LBI could reasonably expect to be haled into court in North Carolina, based on these alleged connections by Defendants McEachern and LBI with this State.

In analyzing these arguments, the Court notes that Plaintiff offers the following contacts to support the exercise of general and specific personal jurisdiction: (1) LBI and the Forum direct electronic activity into this State by their Internet presence; (2) LBI provides advertising space to North Carolina horse farms; (3) LBI provides a Forum for discussing matters of interest to horse owners, including those of specific interest to North Carolinians, e.g., the discussion of a Mt. Airy, North Carolina, horse show; (4) the actual postings and exchanges through LBI and the Forum, as well as the information on the Info Site and the No Site, have targeted Plaintiff in her home state of North Carolina; and, (5) LBI and the Forum have from twenty-two to forty-four North Carolina members.

After reviewing these allegations, the Court concludes first that there is absolutely no basis in this case for the exercise of general jurisdiction over Defendants McEachern and LBI. Plaintiff's allegations do not come close to meeting the standards set forth by the Court of Appeals for the Fourth Circuit with respect to the establishment of general jurisdiction. Cf. ALS Scan, 293 F.3d at 715; Nichols, 991 F.2d at 1200. Specifically, there is no indication that Defendants LBI and McEachern were engaged in "continuous and systematic" activities in North Carolina to subject them to general jurisdiction. As a result, the Court concludes that Plaintiff has failed to present a prima facie case as to general jurisdiction. Therefore, the Court's analysis of the jurisdictional issue

in this case will focus on whether Plaintiff's allegations are sufficient to establish specific jurisdiction over Defendants McEachern and LBI related to Plaintiff's claims in this case.

With respect to Plaintiff's contention that specific jurisdiction exists here, the Court must first determine whether the alleged contacts by Defendants McEachern and LBI demonstrate a manifest intent to target and focus on North Carolina when viewed in conjunction with the overall character of the website. See Young, 315 F.3d at 268; Carefirst, 334 F.3d at 400; ALS Scan, 293 F.3d at 714 (noting that the inquiry involves whether "that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.").   In addressing the character of the website, the Court firsts looks to the Zippo threshold question of interactivity. See Carefirst, 334 F.3d at 400.  A passive website that merely displays information does not support personal jurisdiction, without "something more." See ALS Scan, 293 F.3d at 713-14.  Thus, personal jurisdiction cannot attach to Defendant McEachern by way of the Info Site and No Site, both of which are clearly passive.  However, Defendants McEachern and LBI have acknowledged that the LBI site and the Forum are semi-interactive with regard to the Forum and the For Sale Board.  In addition, the site is also interactive insofar as users must register as Forum members in order to be able to make postings on the site.  Given that the site has some interactive characterization, McEachern and LBI's Internet-based contacts must be analyzed further by the Court to determine if specific jurisdiction exists.

Compared to the original Zippo test, "the ALS test emphasizes [the] requirement of *purposeful* targeting of a particular forum, not just the level of interactivity."  Graduate Mgmt. Admission Council v. Raju, 241 F. Supp. 2d 589, 594 (E.D. Va. 2003) (emphasis in original).  Thus,

19

despite Plaintiff's contention that McEachern and LBI direct electronic activity into North Carolina because of their Internet presence, it is well-settled in the Fourth Circuit that accessibility alone cannot establish personal jurisdiction.  See, e.g., Young, 315 F.3d at 261-262 (holding that Virginians' ability to access a website was insufficient to confer personal jurisdiction).  Rather, under ALS Scan, "the defendant must *direct* activity into the forum state, with the *intent* to engage in business *within the state*."  Graduate Mgmt. Admission Council, 241 F. Supp. 2d at 594 (emphasis in original).  As such, the Court must consider whether Defendants manifested an intent to target and focus on North Carolina.  See ALS Scan, 293 F.3d at 715.

In examining the general thrust and content of the LBI site, it is apparent that instead of intending to target North Carolina, LBI aims to target and focus on individuals interested in miniature horses all over the world, no matter what their geographic location.  For example, while Plaintiff rightly observes that the site has featured advertisements from five North Carolina horse farms, LBI also features horse farm advertisements from forty-seven other states, as well as ten Canadian provinces and eleven foreign countries.  Thus, the advertisements, while possibly of interest to North Carolina residents, do not indicate a manifest intent to target North Carolina.  Cf. ESAB Group, 126 F.3d at 625.  Moreover, because of the relatively small number of North Carolina advertisers compared with the number of advertisers on the site as a whole, the Court concludes that these contacts, which garnered only $300 in revenue for the site over an eight (8) year period, were *de minimis*.  Cf. Chung v. NANA Dev. Corp., 783 F.2d 1124, 1127-28 (4th Cir. 1986) (finding one large shipment of a product to the forum state insufficient to confer personal jurisdiction); Graduate Mgmt. Admission Council, 241 F. Supp. 2d at 595 (finding two product orders shipped to Virginia as insufficient to establish jurisdiction in that state).

20

Likewise, Plaintiff's emphasis on the participation by a few residents of North Carolina in LBI and the Forum, while relevant, does not warrant the Court's exercise of personal jurisdiction because their limited participation does not indicate an intent by Defendants to focus on or target North Carolina. Although LBI and the Forum have somewhere between twenty-two to forty-four North Carolina members, this relatively low number of North Carolina members does not evidence an intent by Defendants to focus in particular on North Carolina. Plaintiff here also points to the inclusion of discussions on the Forum relating to a Mt. Airy, North Carolina, horse show as evidence that Defendants McEachern and LBI focused on and targeted North Carolina. However, the fact that some individual posters on the Forum discussed an event in North Carolina does not necessarily indicate a desire by LBI to target North Carolina as a forum. Rather, like the unsuccessful plaintiff in <u>Young</u>, where discussion of the Virginia warden was found to be only part of a larger story centered on Connecticut, here an isolated mention of an event in North Carolina does not manifest an intent to target North Carolinians, and is *de minimis* compared with the range of discussions on the site.

Finally, with regard to Plaintiff's assertion that personal jurisdiction exists here because the alleged exchanges and postings on the LBI site and the Forum were written about a North Carolina resident who, having her place of business in this State, would likely suffer her injury here in North Carolina, the Fourth Circuit has specifically rejected a similar argument in the Internet context. <u>See</u> <u>Young</u>, 315 F.3d at 260-61. In <u>Young</u>, the district court found that personal jurisdiction in Virginia was proper over a Connecticut newspaper and its reporters because the Connecticut newspaper posted articles on its website regarding a Virginia prison warden, knowing that the warden resided and worked in Virginia and that any harm the warden suffered by circulation of the articles on the

Internet would primarily occur in Virginia.  See Young, 315 F.3d at 262 (discussing the district court's holding).  However, the Fourth Circuit reversed the district court's decision and held that the application of these factors "in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly targeted at or directed to the forum state." Young, 315 F.3d at 262-63.  The Fourth Circuit again emphasized that "[a]lthough the place that the plaintiff feels the alleged injury is plainly relevant . . . it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction . . . is to be upheld." Young, 315 F.3d at 262 (quoting  ESAB Group, 126 F.3d at 626).[7]  Therefore, a finding of jurisdiction on this ground in the present case would erode the rule elucidated by the Fourth Circuit and would unreasonably confer jurisdiction in the forum state of every plaintiff who may be impacted by a posting on an Internet bulletin board.

In addition, even if the contacts alleged by Plaintiff could be sufficient in some circumstances to establish specific jurisdiction, the Court finds that this controversy does not "arise out of" any of the contacts cited.  See, e.g., Helicopteros, 466 U.S. at 414, 104 S. Ct. at 1872 (noting

---

[7] The Court notes that district courts have taken various approaches to this issue.  See, e.g., Bible & Gospel Trust v. Wyman, 354 F. Supp. 2d 1025, 1031 (D. Minn. 2005) (finding  that a website that allowed users to exchange information was semi-interactive, but that where the focal point of the website was not specifically targeted at Minnesota or its residents, there was no personal jurisdiction over an out-of-state resident); Zidon v. Pickrell, 344 F. Supp. 2d 624, 630 (D.N.D. 2004) (finding that a website with a bulletin board allowing individuals to exchange information was interactive but still did not provide jurisdiction over out-of-state resident without "additional contacts"); Lofton v. Turbine Design, Inc., 100 F. Supp. 2d 404, 411 (N.D. Miss. 2000) (finding such a website to be passive and finding no personal jurisdiction); but see Bochan v. La Fontaine, 68 F. Supp. 2d 692, 702 (E.D. Va. 1999) (finding personal jurisdiction over non-resident defendants who allegedly posted libelous messages on an Internet newsgroup where such statements concerned "presumably local activities" of an individual that defendants knew was a Virginia resident).  However, given the facts of the present case and the holding of the Court of Appeals for the Fourth Circuit in Young, this Court concludes that Plaintiff's allegations in this case are insufficient to establish that Defendants' Internet activity was expressly targeted at or directed to North Carolina.

22

that specific jurisdiction analysis is appropriate "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum . . . .") (citation omitted). In this case, Plaintiff brings claims for libel, "harassment," and tortious interference with contract, as well as various intellectual property claims. However, Plaintiff's claims do not relate to the sites' North Carolina advertisers, the sites' North Carolina members, or the sites' North Carolina-related posts. Thus, while specific jurisdiction might be appropriate in a lawsuit involving one of the site's North Carolina advertisers and Defendants LBI and McEachern regarding a dispute over the content or payment of the advertisement, Plaintiff's claims in the present case do not arise out of or relate to any of the alleged North Carolina contacts.

In addition, the Court notes that neither the LBI site nor the Forum are commercial in nature. See Carefirst, 334 F.3d at 400 (noting that personal jurisdiction questions can be decided in part by looking to the commercial nature of the exchange of information that occurs on a website). As Defendants McEachern and LBI have asserted uncontestedly, the principal purpose of the LBI site and the Forum is to facilitate the exchange of information about miniature horses, and is not commercial in nature so as to secure profits for its owners. Defendants McEachern and LBI are not selling anything to North Carolina residents, nor are they even advertising a business or otherwise attempting to engage in commerce in North Carolina. Rather, it appears that they have established their websites for educational and informational purposes, and the Court concludes that they have not engaged in any conduct with North Carolina that would avail them of this State's laws or lead them to believe that they could be haled into court in North Carolina based upon information they have posted on their websites.

23

Finally, the Court notes that the overall nature of Defendants McEachern and LBI's contacts with North Carolina is *de minimis*. In sum, the contacts presented by Plaintiff, when taken together, do not arise to the level of being "so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just, notwithstanding the lack of physical presence in the state." ESAB Group, 126 F.3d at 623.

For all of these reasons, the Court concludes that it would offend fundamental notions of fair play and substantial justice to require Defendants McEachern and LBI to be haled into North Carolina and made subject to the jurisdiction of this Court. Therefore, the Court concludes that it is not proper to exercise personal jurisdiction, either general or specific, over Defendants McEachern and LBI. For the reasons stated herein, Defendants McEachern and LBI's Motion to Dismiss [Document #3] will be granted. Having resolved these issues as to the primary Defendants, the Court will now turn to a consideration of the lesser-involved Defendants.[8]

B.    Motion to Dismiss by Defendant Mona Stone

Defendant Mona Stone is a Canadian citizen and resident. She maintains an Internet website identified as LB Last Chance Auction (the "Auction Site"). Prior to 2003, Stone was a moderator of the LBI Forum. Since 2003, Stone has owned the Auction Site, which provides a marketplace for horse owners and breeders to auction horses and related items.

Plaintiff has alleged claims against Defendant Stone based on her prior role as a moderator and administrator of LBI and the LBI Forum. Plaintiff contends that personal jurisdiction exists over Defendant Stone based upon Defendant Stone's comments on and control of the LBI website,

---

[8] Based upon this analysis, the Court need not consider Defendants McEachern and LBI's alternate grounds for dismissal, including Federal Rule of Civil Procedure 12(b)(6).

the Info Site, and the No Site, which Plaintiff contends have targeted Plaintiff in North Carolina. Plaintiff also contends that Defendant Stone's business interests were furthered by the alleged trademark violations on LBI, the Info Site, and the No Site. In addition, Plaintiff complains that Defendant Stone, while acting in her capacity as moderator of the LBI Forum, posted, "I see they have a toll free number . . . maybe we should ALL call them and let them know our feelings, and run theior [sic] phone bill up sky-high!" (Compl. at ¶ 40.) Finally, Plaintiff contends that Defendant Stone is subject to jurisdiction in North Carolina based on her maintenance of the Auction Site.

In responding to Plaintiff's contentions, Stone asserts that she has not traveled to North Carolina, nor has she had any direct or intentional contact with any person or business in this State. Stone admits that she manages and provides server space for the Info Site. Stone argues, however, that the site is non-commercial and is not directed towards North Carolina. With respect to the Auction Site, Stone contends that it is primarily passive and is interactive in a limited sense to the extent that registrants can post items for sale or bid on items. Stone further argues that of the 2,000 registered users of the Auction Site, only 44 are from North Carolina. In addition, Stone contends that since 1993, only six users from North Carolina have used the Auction Site, and generated revenues of only $260.64. Stone therefore asserts that the Auction Site has only a general presence on the Internet, and it is not directed at or designed with the intent to conduct commercial activity in North Carolina. Moreover, Plaintiff has not made any contention that any of the claims in this case are in any way related to or arising out of the activity on the Auction Site.

For the reasons discussed previously with respect to Defendants McEachern and LBI, the Court concludes that Defendant Stone's role as a moderator and poster on the LBI Site and the Info Site are insufficient to confer personal jurisdiction, either general or specific, upon this Court. With

25

respect to Defendant Stone's posting of a suggestion to call the 800-number for the Guide Horse Foundation to convey disagreement with the use of guide horses, Plaintiff has presented no allegation or inference that Defendant Stone even called the number or in any way directed any activity toward North Carolina. See also S. Morantz Inc. v. Hang & Shine Ultrasonics, Inc., 79 F. Supp. 2d 537, 540-41 (E.D. Pa. 1999) (noting that use of an 800-number is insufficient to convey personal jurisdiction). Finally, with respect to the Auction Site, the Court finds that any contacts based on Defendant Stone's maintenance of the Auction Site are insufficient to support general jurisdiction. Moreover, the Court concludes that none of Plaintiff's claims in the present case arise out of or relate to the Auction Site to establish specific jurisdiction. Therefore, for all of these reasons, the Court concludes that it would offend due process notions of fair play and substantial justice to exercise personal jurisdiction over Defendant Stone. Defendant Stone's Motion to Dismiss [Document #10] will therefore be granted.

C.     Motion to Dismiss as to Lynette Jacobs

Defendant Lynette Jacobs is domiciled in Virginia and is also a member of LBI and the Forum. She has made some 3,517 postings on the Forum. Jacobs also owns, breeds, and exhibits miniature horses. Plaintiff contends that personal jurisdiction exists with respect to Defendant Jacobs because Jacobs posted statements on the Forum, the Info Site, and other sites that are libelous.[9] Plaintiff contends that Jacobs has targeted Plaintiff in North Carolina through her control of and comments on LBI and in the Forum, as well as through providing content to the Info Site.

---

[9] Plaintiff brings her claims based on Defendant Jacobs' statement that: "I still fail to see how people that have not been taught how to train a blind person in mobility and orientation can train a horse to keep them safe." (Compl. at ¶ 20.)

26

In addition, in her Complaint, Plaintiff complains that Jacobs infringed upon Plaintiff's trademarks in order to further her business by advertising on the Info Site, the No Site, and LBI.

In responding to Plaintiff's contentions, Jacobs claims that she does not solicit North Carolina residents, seek business in North Carolina, or manifest an intent to enter contracts within or establish a business presence within this State. Although Jacobs admits posting items on the Forum, she argues that she has never directed any website information to North Carolinians in any way. Jacobs also admits being a supporter of the Info Site. However, she contends that this site is a non-commercial informational site not directed toward any state in particular. Finally, Jacobs emphasizes that she does not control, moderate, or own any of the complained about web pages. However, Jacobs has conceded that she has certain contacts with North Carolina. She admits that she has a friend living in North Carolina with whom she co-owns a horse. She also has attended horse auctions and shows in this State, and some years ago, she purchased horses from a North Carolina auction. Jacobs maintains, however, that these contacts are unrelated to the instant controversy.

After reviewing the parties' positions, the Court concludes that, for the reasons discussed previously with respect to Defendants McEachern and LBI, Defendant Jacobs' role as a poster on the LBI Site and the Info Site are insufficient to confer personal jurisdiction on this Court. In addition, Defendant Jacobs' previous isolated contacts with North Carolina are insufficient to support general jurisdiction, and none of Plaintiff's claims in the present case arise out of or relate to those North Carolina contacts in order to establish specific jurisdiction. Plaintiff has alleged no other activity by Defendant Jacobs other than her postings on these websites. The Court therefore concludes that it would violate due process to exercise personal jurisdiction over Defendant Jacobs

27

based upon the circumstances presented here. Therefore, Defendant Jacobs' Motion to Dismiss [Document #8] will be granted.

D.    Motion to Dismiss by Jennifer Jacula

Defendant Jennifer Jacula is a citizen and resident of Canada. She is also a member of LBI. Plaintiff contends that Jacula's participation with LBI and as a poster in the Forum provide sufficient contacts to establish personal jurisdiction over her in North Carolina. In addition, Plaintiff asserts that Jacula's business interests were furthered by the alleged trademark violations with respect to Plaintiff's alleged "Guide Horse" marks on LBI, the Info Site, and the No Site. (Compl. at ¶ 60.)

In responding to Plaintiff's contentions, Jacula claims that although she is a website developer in Canada, she does not own or control any of the websites Plaintiff complains of. Furthermore, Jacula asserts that she has never traveled through North Carolina. Jacula's only contact with North Carolina was as a website developer for one North Carolina client who was referred to her by another client in Massachusetts. Jacula was paid $145.00 (Canadian) for her services to the single North Carolina client, who was completely unrelated to Plaintiff and the claims raised in this case. Except for this one client, Jacula argues that she has not manifested any intent to conduct commercial activity within North Carolina or to avail herself of the protection of North Carolina's laws. She emphasizes further that she has not directed any advertising or targeted any website information specifically to North Carolina in any manner.

With respect to Defendant Jacula, the Court concludes that, for the reasons discussed previously with respect to Defendants McEachern and LBI, Defendant Jacula's role as a message poster on the LBI Site provides an insufficient basis to allow the Court to exercise personal

jurisdiction, either general or specific, over Defendant Jacula. In addition, Defendant Jacula's previous isolated contacts with North Carolina and a single North Carolina client are insufficient to support general jurisdiction. Moreover, to the extent that Jacula did have prior contacts with a North Carolina client or other North Carolina contacts related to her website development company, none of Plaintiff's claims in the present case arise out of or relate to those North Carolina contacts in order to establish specific jurisdiction. Therefore, Defendant Jacula's Motion to Dismiss [Document #6] will be granted.

E.      Motion to Dismiss by Debi Murphy

Defendant Debi Murphy is a Louisiana resident who is an LBI member. Defendant Murphy also owns a website that is unrelated to the present case. Defendant Murphy, to her knowledge, has never traveled through North Carolina. Moreover, she contends that she has never had direct, intentional contact with any business or person in North Carolina, nor has she advertised targeting the State. Defendant Murphy does not own or control any of the complained-of websites. In sum, Defendant Murphy argues she has no contacts with North Carolina except that one entry, out of more than 60, in her unrelated website's guest book was made by a North Carolinian.

Plaintiff has made no specific averments concerning Defendant Murphy and has not responded to Defendant Murphy's Motion to Dismiss. The Court concludes that, for the reasons discussed previously with respect to Defendants McEachern and LBI, Defendant Murphy's role as a member and poster on the LBI Site provides an insufficient basis to allow the Court to exercise personal jurisdiction, either general or specific, over Defendant Murphy. Therefore, Defendant Murphy's Motion to Dismiss [Document #42] will be granted.

F.      Motion to Dismiss by Danielle Emond

29

Defendant Danielle Emond is also a citizen and resident of Canada. She is a member of LBI and has made posts on the Forum. Plaintiff contends that Defendant Emond has sufficient contacts with North Carolina to support the exercise of personal jurisdiction over her because Defendant Emond posted statements on the Forum, the Info Site, and the No Site that were directed toward Plaintiff in North Carolina. Plaintiff also contends that Defendant Emond's support of the Info Site, which Plaintiff contends is directed toward North Carolina, constitutes contacts with this State.

In responding to Plaintiff's assertions, Defendant Emond contends that she has not had direct, intentional contact with North Carolina. Further, she claims not to have traveled through the State since childhood. Although she has made posts on the Forum, Defendant Emond contends that these posts were not specifically targeted at North Carolina and did not manifest an intent to conduct commercial activity within the State by offering contracts, products, or services to be performed in North Carolina.

The Court concludes that, for the reasons discussed previously with respect to Defendants McEachern and LBI, Defendant Emond's role as a member and poster on the LBI Site provides an insufficient basis to allow the Court to exercise personal jurisdiction, either general or specific, over Defendant Emond. Therefore, Defendant Emond's Motion to Dismiss [Document #13] will be granted.

G.     Motion to Dismiss by Kris Patsolic

Defendant Kris Patsolic ("Defendant Patsolic") is a United States citizen and is domiciled in Ohio. Defendant Patsolic has posted on LBI and used the site to gather information and to state her opinions. Defendant Patsolic does not own property or have a place of business in North

Carolina, nor does she conduct business in North Carolina or advertise in the State. Further, Defendant Patsolic denies soliciting any business within this State or manifesting any intent to enter into contracts or establish a business presence in North Carolina. Defendant Patsolic contends that her presence on the Internet has not been used to target this State.

Plaintiff has not responded to the arguments raised by Defendant Patsolic, and Plaintiff has made no specific averments concerning any specific activity or North Carolina contacts by Defendant Patsolic. The Court concludes that, for the reasons discussed previously with respect to Defendants McEachern and LBI, Defendant Patsolic's role as a poster on the LBI Site provides an insufficient basis to allow the Court to exercise personal jurisdiction, either general or specific, over Defendant Patsolic. Therefore, Defendant Patsolic's Motion to Dismiss [Document #12] will be granted.

H.     Motion to Dismiss by Kim Bond

Defendant Kim Bond ("Defendant Bond") is a United States citizen who is domiciled in Texas. She is also a member of LBI and has made postings on that site. Plaintiff asserts that there is a sufficient basis for this Court to exercise personal jurisdiction over Defendant Bond because she purposefully targeted Plaintiff in North Carolina by making postings about Plaintiff in the LBI Forum. In addition, Plaintiff contends that Defendant Bond wrote an e-mail to her on August 28, 2003, making statements that Plaintiff contends were "false accusations." (Compl. at ¶ 30.) Plaintiff sent an e-mail back to Defendant Bond stating that she believed the statements were false and libelous. Plaintiff contends that Defendant Bond replied and wrote, "I am friends with some very reputable trainers and judges in the Arabian industry. I am printing your information out for

them to 'discuss and evaluate' among their peers." (<u>Id.</u>) Plaintiff does not make any other specific allegations regarding Defendant Bond.

Defendant Bond contends that this Court does not have personal jurisdiction over her because she has no direct contacts with North Carolina. She contends that she has never had direct contact with any person or business in North Carolina, that she has never traveled through the State, and that she has not manifested an intent to conduct commercial activity within the State. Moreover, Defendant Bond asserts that she neither owns nor controls any of the complained-of web pages and has never been one of the Forum's moderators. Although Defendant Bond concedes posting on the complained-of website, she argues these posts did not target North Carolina specifically.

The Court concludes that, for the reasons discussed previously with respect to Defendants McEachern and LBI, Defendant Bond's role as a member and poster on the LBI Site provides an insufficient basis to allow the Court to exercise personal jurisdiction, either general or specific, over Defendant Bond. The only other contacts alleged by Plaintiff are two e-mails from Defendant Bond to Plaintiff on August 28, 2003. This limited e-mail contact is insufficient to establish general jurisdiction. Moreover, with respect to specific jurisdiction, Plaintiff has not made sufficient allegations to show how those e-mails are related to her claims. Thus, Plaintiff has not shown or sufficiently alleged that the e-mails created any cause of action cognizable in the North Carolina courts. Moreover, there is no evidence or allegation that Defendant Bond even knew that Plaintiff was in North Carolina, or that the e-mails were in any way directed to North Carolina. In addition, the e-mails did not relate to any commercial transaction, but were simply a disagreement of opinion between two individuals. Therefore, the Court concludes that the fact that Plaintiff and Defendant

had a single e-mail exchange of this nature is *de minimis* and is insufficient to confer personal jurisdiction over Defendant Bond as to Plaintiff's claims in this case. Therefore, Defendant Bond's Motion to Dismiss [Document #15] will be granted.

I.     Remaining Defendants Who Have Not Filed Motions to Dismiss

Finally, the Court notes that Defendants Arlene Toback, Kay Baxter, and Karen Francschini have not filed a Motion to Dismiss or any responsive pleading or document. However, the Court may raise the issue of lack of personal jurisdiction *sua sponte*, particularly where the allegations in the Complaint would not appear to establish a basis for the Court's assertion of personal jurisdiction. See, e.g., System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy, 242 F.3d 322, 324 (5th Cir. 2001).

In this case, Plaintiff's Complaint alleges that Defendant Toback is a citizen and resident of Texas, Defendant Baxter is a citizen and resident of Illinois, and Defendant Francschini is a citizen and resident of Pennsylvania. With respect to Defendants Baxter and Francschini, Plaintiff brings claims related to their postings on the LBI Forum. Plaintiff also complains that Defendant Baxter's business was furthered by the alleged trademark infringement based on the use of the "Guide Horse" marks claimed by Plaintiff on the Info Site, the No Site, and LBI. With regard to Defendant Toback, Plaintiff alleges that Defendant Toback is a publisher of LBI who exercises a high degree of editorial control over the publication by moderating content, selectively encouraging libelous content about Plaintiff, and removing positive information about her. In addition, Plaintiff alleges

that Defendant Toback made a late-night telephone call to a Guide Horse Foundation 800-number that was connected to Plaintiff's home.[10] (Compl. ¶ 40.)

Having reviewed all of Plaintiff's allegations and contentions, the Court concludes that, for the reasons discussed previously with respect to Defendants McEachern and LBI, Plaintiff's contentions regarding posting or publishing on the LBI Site provides an insufficient basis to allow the Court to exercise personal jurisdiction, either general or specific, over Defendants Toback, Baxter, and Francschini. In addition, with respect to the alleged telephone call by Defendant Toback, a single telephone call to the Guide Horse Foundation's 800-number is insufficient to create a showing that Defendant Toback targeted North Carolina or purposefully availed herself of the laws of the State. See S. Morantz, 79 F. Supp. 2d at 540-41. However, as to these three Defendants who have not filed a Motion to Dismiss, Plaintiff should be allowed "a reasonable opportunity to present any available evidence supporting the court's jurisdiction." System Pipe & Supply, 242 F.3d at 325. Therefore, the Court will not *sua sponte* dismiss this case for lack of personal jurisdiction as to these three Defendants, but rather the Court will allow Plaintiff thirty (30) days in which to file any additional evidence of jurisdiction as to these Defendants. If Plaintiff fails to provide sufficient additional evidence or allegations to support the Court's exercise of jurisdiction over these Defendants, the Court will dismiss *sua sponte* the claims against Defendants Toback, Baxter, and Francschini.

IV.    CONCLUSION

_____

[10] Specifically, Plaintiff asserts that Defendant Toback called the 800-number and said that "the members of the forum were not going to allow her to continue with her experiment and that every [sic] were going to stop her, 'whatever it takes.'" (Id.) Plaintiff claims that Defendant Toback made the call without identifying herself and with the intent to harass Plaintiff. (Id.)

34

For the reasons discussed above, the Court concludes that it does not have personal jurisdiction over the Defendants who have filed Motions to Dismiss in this case. Therefore, Defendants LBI, McEachern, Jacobs, Stone, Murphy, Bond, Patsolic, Emond, Murphy, and Jacula's Motions to Dismiss for Lack of Jurisdiction [Document Nos. 3, 6, 8, 10, 12, 13, 15, 42] are GRANTED and the claims against Defendants LBI, McEachern, Jacobs, Stone, Murphy, Bond, Patsolic, Emond, Murphy, and Jacula are DISMISSED WITHOUT PREJUDICE. In addition, the Court concludes that it appears that Plaintiff has failed to make a prima facie allegation of jurisdiction over Defendants Toback, Baxter, and Francschini. However, because these Defendants have failed to respond to any of Plaintiff's pleadings, the Court will allow Plaintiff thirty (30) days in which to file any additional evidence of jurisdiction as to these Defendants. If Plaintiff fails to provide sufficient additional evidence or allegations to support the Court's exercise of jurisdiction over the remaining Defendants, the Court will dismiss *sua sponte* Plaintiff's claims against Defendants Toback, Baxter, and Francschini.

An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the <u>30th</u> day of September, 2005.

United States District Judge

35